# CASES AT LAW

DETERMINED IN ·THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1867.

### THE STATE, PARKER, PROSECUTOR, v. CITY OF NEW BRUNSWICK.

1. Have the authorities of a city the power, by virtue of the usual provision to regulate streets, contained in the municipal charter, the right to direct the grading and paving of a turnpike road lying within the city limits?
2. From the facts of this case, *held*—that a dedication, by the turnpike company, of that part of its road within the city, to the usses of a public street, was to be implied.
3. By the charter of the city of New Brunswick, it is competent to the common council to commit to the city paver the regulation of the grade of the street, so far as the same consists in such mere alteration of the surface of the ground, as is usually incident to the act of paving; but the *power to regulate* the general grade of the street cannot be delegated.

Error to Supreme. Court.

See 1 *Vroom* 395.

State, Parker, v. City of New Brunswick.

*C. Parker,* for prosecutor.

*A. V. Schenck,* for defendant.

The opinion of the court was delivered by

THE CHIEF JUSTICE. This controversy has arisen in consequence of an ordinance, passed by the authorities of the city of New Brunswick, for the grading and paving of one of the streets of the city, known as Easton avenue. The prosecutor of this *certiorari* is an owner of certain lots fronting on this street, and having failed to grade the street, or to grade and pave the sidewalks in front of said lots, in compliance with a city ordinance to that effect, such grading and paving were done by the municipal officers in the manner provided for in the local law just mentioned. In the statement of facts, agreed upon by the counsel of the respective parties, it is admitted that "Easton avenue," to use the language of the stated case, "in front of said lots, is one of the public recognized streets of the said city, and is also the turnpike road of the New Jersey Turnpike Company, and the land over which the said road runs is the property of said company, having been conveyed to them soon after their organization in A. D. 1806. Said turnpike road has been regularly worked by said company up to the passage of said ordinance, and that part of it upon which said lots front, constitutes a part of the road for traveling, on which said company charges and collects toll, and is within the corporate limits of said city of New Brunswick."

It is insisted that the city ordinance, directing this portion of Easton avenue to be graded and paved, is illegal; in the first place, because the municipal jurisdiction, in respect to public streets, does not extend to a turnpike.

The question thus presented is one of public importance. Many of the cities of this state are penetrated (to some extent) or intersected by these turnpikes. Such roads answer and are used for all the purposes of public streets. They are built upon, and the sidewalks are frequently graded and

paved by the authorities of the municipality.    Pipes for
water and gas are laid through them : in fact, in point of
convenience and use, they differ not at all from the other
thoroughfares of the cities.    Such uses and improvements do
not, in any degree, conflict with the enjoyment of the road as
a turnpike.    These civil privileges are not inconsistent with
the fullest use of the road to which the act incorporating the
company devotes it.    To maintain, to this extent, the right
of the city over the road in question, would, I think, be in
no wise inconsistent with the decision in *Quin* v. *City of
Paterson*, 3 *Dutcher* 35, for in that case the attempt was to
alter the location of the turnpike, which was a manifest
interference with the rights of property of the turnpike com-
pany.    That case rested on the correct and obvious principle,
that a supplement to the charter of the city of Paterson,
whereby the authorities of the city were authorized " to take
up and vacate any of the streets or highways of said city,
and to relay the same," did not include the right to alter the
situation of a road within the city limits belonging to a
private corporation.    This construction went upon the ground
that the exercise of the power thus conferred, would be in
competition with the rights of property inherent in the turn-
pike company.    The decision, therefore, can be no authority
against the existence, in the municipal body, of a right to
perform acts which, while they are highly beneficial to the
community, do not interfere with the interests of the private
corporation.    Nor does there appear to be anything in our
general legal system, so far as it relates to this subject, which
would seem to debar the public from the exercise of this kind
of jurisdiction over turnpikes.    Such roads are public high-
ways.    They are established by the sovereign authority of
the state for the common benefit, and although the road-bed,
and the franchise to take tolls are private property, the
easement itself is altogether of a public character.    In con-
formity with this doctrine, in the *Commonwealth* v. *Wil-
kinson*, 16 *Pick*. 175, it was decided that an indictment
would lie, as for a public nuisance, against a person placing

an obstruction in a turnpike road, the ground of such conclusion being that such road was a public highway. And the Supreme Court of Connecticut, evidently taking a similar view, maintained, in the case of *The State* v. *Maine*, 27 *Conn.* 641, that the right of way over a turnpike was as much vested in the public as in a common highway, and that, consequently, the resumption of the franchise of the turnpike company left the easement of the public in the road unimpaired. The decision of *Wright* v. *Carter*, 3 *Dutcher* 76, in the Supreme Court of this state, is also founded on the doctrine that the right of the public in a turnpike, subject to the payment of tolls, is identical with the right of the public in a common highway. On the assumption, therefore, that this is the rule of law on this subject, there does not appear to be any good reason why such roads should not be held to be subject, when they lie in cities, to the regulation, in a manner not inconsistent with their use as turnpikes, of such local authority.

But as the decision in this case will rest on other considerations, no opinion is intended to be expressed upon this point. The subject was but slightly touched in the discussion of counsel, no authorities being referred to on either side. The question, therefore, will be left for future determination.

For the present purpose, it is sufficient to say that, by the state of the case agreed upon by the parties, and which has been above recited, it is conclusively admitted, we think, that the avenue in question is one of the public streets of New Brunswick, and, as such, is subject to the city legislation. The fact is admitted that Easton avenue is one " of the public recognized streets of said city." If this be so, why is it not liable to regulation by the public authorities? The only answer that can be given to this interrogatory is, that the bed of the street is also occupied by a turnpike. But such coincidence proves nothing, as both uses are entirely consistent. The admission is, that the street is public and recognized. Recognized by whom? Can this language be confined so as to exclude the turnpike company? And yet,

if this company has recognized this avenue as a public street, there can be no doubt that such recognition would amount to a dedication. It is to be remembered that there is nothing to raise even a suspicion that the turnpike company make any objection to the passage or enforcement of the city ordi-. nance in 'question. These corporators, to all appearance, have stood by and seen this grading and paving done in the prescribed mode. Under these circumstances, and by force of the conceded facts in this case, we are not able to pronounce that the street in question was not under the legislative power of the city council; this was clearly the case, if the avenue was recognized as a public street by the municipal authorities, on the one hand, and the turnpike company on the other. This we regard as admitted in the case.

The next objection to the assessment in question is, that the ordinance is void from uncertainty and vagueness.

Under this head, the point made was, that although the ordinance directed the street to be graded, it did not establish such grade. There can be no doubt, that where a new grade is to be established in a street, that, in pursuance of the common powers usually conferred in the charters of cities, it is incumbent on the legislative branch of the municipal government to ascertain and fix such grade. This function cannot be passed over into the hands of subordinate officers. And in the present case, if it had appeared that a new general grade was authorized to be established on the avenue in question, and that the establishing of such grade was left to the discretion of any person, instead of being prescribed in the ordinance itself, we could have had no hesitation in declaring the whole proceeding void. But such are not, as we understand, the facts of the present case. The ordinance, it it is true, requires, in general terms, the street to be properly regulated and graded, and the gutters to be properly graded, paved, and curbed, and the sidewalks to be properly graded and paved, with flagging or bricks. But it does not sufficiently appear that the grading here intended, was anything more than that slight alteration of the surface of the ground,

State, Parker, v. City of New Brunswick.

usually incident to the laying of pavements, and the paving of gutters. And there is nothing to indicate any intention to alter the general grade of the street. The power to regulate the streets, conferred by the charter of the city of New Brunswick, is peculiar. Its language is: " It shall and may be lawful for the common council of the said city to make and establish ordinances and regulations for the leveling, grading, regulating, paving, curbing, flagging, or graveling of the streets or sidewalks of the said city, to require the work to be done by the owners or occupants of lots fronting or adjoining such streets, and to be superintended by the city paver, who, under the direction of common council, shall prescribe the manner in which such work shall be done." From this provision, it would seem competent in the common council to confide, to the city officer here designated, the authority to direct the grade and the work incident to the laying of pavements, gutters, &c., in a street, the general grade of which is not intended to be altered. Such, we understand, to be the circumstances of the present case. The ordinance in question is, undoubtedly, loose, and, in some possible applications, might be considered fatally defective. And in its present bearings, it has not been sanctioned without some hesitation.

But the decision of the court below should not be disturbed, except for manifest error, and as we cannot say that such exists, let the judgment be affirmed.

*For affirmance*—BEASLEY, C. J., BEDLE, DALRIMPLE, WOODHULL, DEPUE, FORT, WALES, CLEMENT, VAIL.  9.

*For reversal*—VREDENBURGH, KENNEDY.  2.

CITED in *Cook, Collector,* v. *State,* 4 *Vroom* 478; *State, Felix, pros.,* v. *Atlantic City,* 5 *Vroom* 102; *State, Sigler, pros.,* v. *Fuller, Collector,* 5 *Vroom* 235.